Hillsborough, }
April 2, 1918. }

### AIMÉE MORIN, *Adm'x, v.* NASHUA MANUFACTURING COMPANY.

A movable elevator, operated by hand-power, is a "hoisting apparatus" within
the meaning of Laws 1911, c. 163, s. 1; and a power-driven elevator used for
carrying employees while at their work is "machinery . . . operated by
. . . mechanical power," within the meaning of the same section.

The applicability of Laws 1911, c. 163, s. 1, to a particular machine, otherwise with-
in the statute, does not depend upon its continuous operation while employees
are at work, but upon its liability to be put in motion at any time.

If the employment, under a reasonable construction, expose the employee to the
dangers incident to proximity to machinery, he is an employee under class (b) of
Laws 1911, c. 163, s. 1, though all his work is not done in proximity to dangerous
machines and the injuries complained of did not result therefrom.

Upon a motion for a new trial, a question of law determined at the first trial is
not ordinarily open for further discussion.

A new trial does not require a retrial of the issues in which no error was committed.

PETITION, for a new trial, filed after the decision reported *ante*, 354.
Upon the death of Lizotte, his administratrix appeared. The peti-
tion was granted upon the single issue of liability, and the defend-
ant excepted. Transferred by *Peaslee*, J., from the May term, 1917,
of the superior court. The facts sufficiently appear from the opinion.

*Doyle & Lucier* (*Mr. Lucier* orally), for the plaintiff.

*Branch & Branch* (*Mr. Randolph W. Branch* orally), for the de-
fendant.

WALKER, J. By the former decision in this case (*ante*, 354), it
was held upon the facts then before the court that Lizotte could not
recover under the statute (Laws 1911, c. 163, s. 1), because his em-
ployment in the defendant's mill did not require that any part of
his work should be performed, in the language of the statute, "on,
in connection with or in proximity to any hoisting apparatus, or any
machinery propelled or operated by steam or other mechanical
power." At the hearing upon the plaintiff's motion for a new trial
it appeared that the deceased worked in a room where there was a
movable elevator used for raising and lowering heavy cases of goods,
which was operated by hand-power. Adjacent to this room was the
stamping room, containing a power-driven press used for imprinting
the brand or trademark on the finished goods. In another adjoin-

ing room there were power-driven elevators, upon which the deceased and other employees rode while in the performance of their work. Little doubt can be entertained that the hand elevator is a "hoisting apparatus" within the meaning of the statute, and that the stamping machine and the power-driven elevators are also included in the statutory language. The fact that the stamping machine had not been operated for three weeks before the accident, on account of a strike, did not remove it from the class of machines whose operation involved more or less danger to the employees in the immediate vicinity. It was liable to be put in motion at any time. Its operation was not permanently discontinued. The applicability of the statute to a particular machine does not depend upon its continuous operation while employees are at work. Its liability to be put in motion at any time renders it a dangerous instrumentality installed by the manufacturer for use in his mill or factory.

The evidence also justifies a finding that the deceased's work of moving boxes of goods in the storehouse took him into all three rooms; but he had nothing to do with the operation of the machines and was not injured thereby.

From a finding of the foregoing facts it would seem to follow that the storehouse which is a part of the defendant's manufacturing plant (*Boody* v. *Company*, 77 N. H. 208), and in which the deceased was employed, contained dangerous mechanical instrumentalities of the character contemplated in the statute. In this respect the present case differs materially from that presented on the former transfer. It did not then appear that the deceased's work brought him in proximity to any dangerous machine, and it was held that the statute did not apply, while it now appears, or the fact may be found upon the evidence, that in the performance of his duties he was within the danger zone created by the machinery. It is not essential that all his work should be done in proximity to dangerous machines, or that the injuries complained of should result from such machines. If his employment, under a reasonable construction, exposed him to the dangers incident to proximity to machinery, he was an employee under class (b) of the statute and was entitled to the benefit of such classification.

In the former opinion in this case, the court in discussing the case of *Boody* v. *Company*, *supra*, say (*p.* 357): "Boody was employed as a handy man about the factory, he had no particular place to work, but he might be called upon to perform work anywhere in the mill, hence some of his work inevitably must have been 'on, in

connection with or in proximity to' power-driven machinery. He was, therefore, engaged in employment (b), and the court held that, as the plaintiff was so employed and was killed by an accident arising out of and in the course of his employment, the action to recover damages for his death could be maintained, even though his death was not caused by the negligence of fellow-servants, or by one of the risks incident to work 'on, in connection with or in proximity to' power-driven machinery. We believe this broad and liberal construction of the statute, considering its remedial nature, was correct." According to this exposition of the Boody case it is a direct authority for the proposition that Lizotte was within the protection of the statute, because his employment at times brought him in proximity to dangerous machinery, though at the time of the accident he may not have been in such proximity.

The defendant's position is that the plaintiff must show that her intestate at the time of the accident was within the danger zone indicated by the statute, in order to sustain the action. It is argued that the Boody case does not establish the contrary proposition, because Boody at the time of the accident was in proximity to power-driven machinery; that is, that he was working near the defendant's water-wheel; and that the decision was therefore right. But whether it might have been put upon that ground, it is useless to speculate; for an examination of the opinion clearly shows that it does not proceed upon that theory, while the above quotation from the former Lizotte case declaring what the law of the Boody case is, renders further discussion upon this point unnecessary. Moreover, upon a motion for a new trial a question of law determined at the first trial is not ordinarily open for additional discussion. *Bell* v. *Lamprey*, 58 N. H. 124; *Olney* v. *Railroad*, 73 N. H. 85, 91.

The motion for a new trial was properly granted.

*Exception overruled.*

PEASLEE, J., did not sit: the others concurred.

Upon the filing of the foregoing opinion, the defendant moved for a rehearing upon the ground that the superior court could not make an order that only the above issue should be retried, but that the whole case must be retried, because the court in this case (*ante*, 358) made the following order: "Exception sustained: verdict set aside: judgment for defendants."

On this motion argument in writing was invited.

*Branch & Branch,* for the motion.

*Doyle & Lucier,* opposed.

Plummer, J.    The practice in this state, when a new trial is granted, does not require a retrial of the issues in which there was no error committed, if these issues can be separated from the ones in which the errors occurred.   That part of a verdict which is good is preserved, and the part which is bad is destroyed.   "The general principle of the correction of errors which occur in judicial proceedings, preserves, as far as possible, what is good, and destroys only what is erroneous when the latter can be severed from the former, and destroys no more of the good than is necessary in the process of rectification."   *Lisbon* v. *Lyman,* 49 N. H. 553, 583; *Piper* v. *Railroad,* 75 N. H. 435, 446; *McBride* v. *Huckins,* 76 N. H. 206, 213; *Doody* v. *Railroad,* 77 N. H. 161, 166.   The error in the trial of the case related to the issue that Lizotte's employment brought him within the provisions of the employers' liability statute. Hence this issue must be retried.   The extent to which such trial necessarily involves other issues in the case is a question of fact which has been found by the trial court, without exception to the sufficiency of the evidence.   The defendants in support of their motion rely upon the statute, "Whenever a new trial is granted, the action shall be brought forward on the docket of the court, and shall be tried as if no judgment had been rendered therein." P. S., c. 230, s. 5.   It does not appear that this case had been stricken from the docket of the superior court or that the direction of the supreme court,—judgment for defendants—had been entered thereon.   But assuming that this had been done, or that the order of the supreme court was equivalent to such entry, striking off the entry of judgment will leave the case to be tried as if no judgment had been entered.   The statute does not require the case to be tried as if no trial had been had, as the defendants apparently construe it, but leaves the case after the judgment is vacated to stand as if the error had been discovered before the judgment was ordered.

*Former result affirmed.*

Peaslee, J., did not sit: the others concurred.