## SNYDER v RHEINISCH HARDWARE CO. and INDUST. COMM.

Ohio Appeals, 2nd Dist, Shelby Co.

No. 112. Decided June 3, 1939.

Taylor Cummons, Sidney; R. E. Boller, Jr., Sidney; H. K. Forsyth, Sidney, for appellant.

Urban H. Doorley, Sidney; Thomas J. Herbert, Attorney General, Columbus, for appellee.

## OPINION

By BARNES, J.

The above-entitled cause is now being determined as an error proceeding by reason of plaintiff's appeal on questions of law from the judgment of the Court of Common Pleas of Shelby County, Ohio.

The proceeding originated before the Industrial Commission of Ohio through plaintiff's filing an application for compensation for injuries sustained by him on December 8, 1933.

The application was filed by plaintiff on December 2, 1935, and was denied by the Commission on September 15, 1936, evidenced by their finding, copy of which is herewith set forth in full:

"Upon consideration whereof, it is the order of the Commission that the claim be disallowed for the reason that proof now of record shows that claimant for a valuable consideration entered into an agreement to release and discharge the employer named from all liability arising out of the accident in question, and for the further reason that claimant at the time of receiving such injury was a corporate officer of the employing corporation, and as such it was his duty to see that said corporation complied with the Workmen's Compensation Law."

Within statutory time plaintiff filed an application for rehearing; the application for rehearing was heard and testimony therein reduced to writing; and on final hearing of said application the claim was again denied on or about May 2, 1938, the following being the order of disallowance: "That claim be disallowed on rehearing."

Within statutory period the proceeding was appealed to the Court of Common Pleas. Pleadings were thereafter filed, consisting of plaintiff's petition, defendants' answer and plaintiff's reply.

The cause came on for hearing before the trial court and a jury, and resulted in findng against the plaintiff and for the defendants.

The petition was in the usual form and, among other things, set out that defendant Rheinisch Hardware Company was a corporation duly organized and existing under the laws of the State of Ohio, and during all times mentioned in the petition was conducting a retail hardware and sheet metal contracting business.

That on the 8th day of December, 1933, the Rheinisch Hardware Company had regularly in its employ three or more workmen or operatives in the same business under a contract of hire. That the defendant Rheinisch Hardware Company failed and neglected to comply with the provisions of §1465-69, GC; that on the 8th day of December, 1933, plaintiff, while in the regular course of his employment, suffered a severe injury, disabling him for a long period of time and requiring a period of hospitalization.

Thereafter follow allegations of the filing of application with The Industrial Commission and other steps finally culminating in the disallowance of the claim and the appeal to the Common Pleas Court.

The defendant The Industrial Commission of Ohio, through the Attorney

General's office, filed a general demurrer to the petition, which, after hearing, was overruled.

Thereafter the Commission filed no further pleading, nor did it participate in the trial of the case.

The defendant the Rheinisch Hardware Company first filed demurrer, which was overruled, and thereafter this defendant filed answer.

The answer admits the entity of itself and The Industrial Commission; the nature and character of the business in which the defendant Hardware Company was engaged; the filing of claim for compensation by plaintiff; the denial of such application; the rehearing and denial; and the landing of the proceeding in the Court of Common Pleas through appeal.

All other allegations of the petition are denied.

In addition to the general denial the defendant Hardware Company averred that at the time of plaintiff's injury the defendant did not employ or have in its service three or more workmen or operatives regularly in its business or in or about the establishment under any contract of hire.

The answer contained the further averment that at the time of the injury the plaintiff was not employed in the service of the defendant, but was a stockholder and an executive officer of such corporation, being its vice president and assistant manager, and had been such executive officer from the formation of the corporation to the time of the injury, and had taken no action to cause the corporation to become a subscriber to the state insurance fund, as provided by the Workmen's Compensation Law of Ohio.

The answer contained the further averment that after the injury plaintiff demanded that defendant compensate him for his personal injuries and damages suffered and that on or about March 6, 1934, plaintiff and defendant agreed on the settlement of plaintiff's claim and that the defendant compensated plaintiff for said injuries and damages and fully carried out and performed the written terms of settlement,

and that plaintiff executed and delivered to the defendant Hardware Company his written receipt releasing the defendant from any and all claims of plaintiff for personal injuries or damages caused by the injury to plaintiff as set out in his petition.

Plaintiff's reply admits the averment of the answer that plaintiff was a stockholder and executive officer, to-wit, vice president; and thereafter denies each and all averments of the answer except only such as are admissions of the allegations of the petition.

The issues joined through the pleadings were the following:

1. Was the defendant the Rheinisch Hardware Company at the time of plaintiff's injury an employer of three or more workmen, as that term is designated under the Code?

2. Was the plaintiff at the time of the accident an employee of such character as would bring him under the provisions of the Workmen's Compensation Law?

3. Was plaintiff injured in the course of his employment under such circumstances as would render the Hardware Company amenable under the law?

4. Was the settlement a defense under the law?

The trial court, under instructions, submitted issues Nos. 1, 2 and 3 to the jury.

Issue No. 4, being the issue of claimed settlement, was by the court withdrawn from the consideration of the jury.

The facts as they relate to issues 1 and 2 are not in dispute, although counsel of the respective parties arrive at directly opposte conclusions as to the legal effect of such facts.

In 1932, George Rheinisch, a tin and sheet metal worker, and the plaintiff, Elmer L. Snyder, holding an agency for the sale of electrical refrigerating equipment, entered into a partnership; and included in such partnership was a retail hardware business.

Within a period of a year, the parties concluded to incorporate their business, stock to be issued proportionate to the

amount contributed by each personally.

By written agreement, it was provided that Rheinisch would have 92 shares of stock, Snyder 7 shares and one share to be issued as dummy stock for the purpose of organization. The contract further provided that Snyder's share of profits as and when declared, would be used in the purchase of stock up to the time that Rheinisch and the plaintiff would have equal holdings. It was a further stipulation of said contract that each of the parties would devote his time and energy to make a success of the corporate venture, and each to draw from the business as part of his salary such sum as the directors voted.

Following the organization of the corporation, salaries were paid both to Rheinisch and Snyder at $20.00 per week, but this amount shortly afterwards was reduced to $15.00 per week.

Neither Rheinisch nor Snyder were experienced hardware men.

Melvin Schiff, an experienced operator in a retail hardware store, was employed and gave his entire time to looking after the store. Rheinisch for years had been a tinner and sheet metal worker and continued his operations along this line after the formation of the corporation and as a part of the corporation's activities. The plaintiff, Snyder, gave special attention to the electrical refrigeration, the agency for which had been taken over as part of the corporation's business.

In the organization of the corporation, George Rheinisch was named as president and general manager; Albert Aselage, the holder of the one share of dummy stock, was made secretary; the plaintiff, Elmer L. Snyder, was named vice president, and there is some evidence that he was also designated as assistant manager. Whether or not he was so named, we consider unimportant so far as the issues in this case are concerned.

If, under the uncontroverted evidence, the president of the corporation. George Rheinisch, and the plaintiff vice president, Snyder, may be properly termed employees at the time of the alleged accident, then the proof would be undenied that three employees were regularly employed in and about the business of the corporation under a contract of hire. Counsel for defendant, while admitting that under certain circumstances stockholders or even officers of a corporation may be employees, argues against such determination in the instant case.

We have no difficulty in arriving at the conclusion that the facts supporting employment are as strong in the instant case as in any reported case to which our attention has been called.

In addition to the cases cited in the briefs of counsel, we have before us a written opinion of the Court of Appeals of Lucas County, in the case of George E. Kuehnl v The Industrial Commission of Ohio, the opinion by Overmeyer, J., concurred in by Carpenter and Lloyd, JJ., released March 27, 1939. In this case the court stated that the sole and only question submitted was whether or not the claimant, also president of the corporation, was such an employee at the time of injury as to be entitled to receive compensation for injuries received by him while working for the corporation. The statement of the case indicates that the incorporators, just as in the instant case, were laborers at their respective avocations and incorporated as a matter of convenience. The claimant, Koehnl, at the time of his injury was taking some measurements at a location where the corporation had a contract to do some building work. In performing this work, he fell on to an operating saw, injuring the fingers of his hand.

It was the holding of the court that Koehnl was an employee.

As supporting the proposition that officers of a corporation may also be employees for hire, the following cited cases are listed:

Skouitchi v Cloak & Suit Co., 230 N. Y. 296; (130 N. E. 298);
Stevens v Industrial Commission, 346 Ill. 495; (179 N. E. 102);

216

Bowne v Bowne Corporation, 221 N. Y. 28; (162 N. Y. Sup. 244);

Beckman v Olerich & Son, 160 N. Y. Sup. 791;

In re Paynes, 118 N. E., (Ind.), 387;

Dewey v Dewey Fuel Co., 210 Mich., 370;

71 Corpus Juris 507;
15 A. L. R. 1285;
25 A. L. R. 375;
44 A. L. R. 1217;
47 A. L. R. 843;
81 A. L. R. 644;
42 O. Jur., p. 609, Sec. 33;

Cleveland Auto Body Co. v Frank, 23 Oh Ap 211.

The text in 42 O. Jur. Sec. 33, supra, cites under note 9, the case of Body Company v Frank, 23 Oh Ap 211, supra.

In our judgment the Frank case in 23 Ohio Appellate, supra, may not be accepted as authority on this question since the case was decided on other grounds.

While in other jurisdictions we find authority contrary to the proposition that executive officers of a corporation may be employees, yet we think the greater weight of authority and the better reasoning are consonant with the theory that under certain conditions such executive officers may be employees and entitled to relief under the Workmen's Compensation Law.

As heretofore stated, the Lucas County case, supra, is a direct Ohio authority on this question.

Under the undisputed evidence in the instant case, we are constrained to the view that the president, George Rheinisch, and the vice president and plaintiff, Elmer L. Snyder, were employees, and that their activities as such were of such a character that they should be counted in determining the question as to whether or not there were three or more employees regularly employed under contract of hire.

Further, it is conceded that Melvin Schiff was a regular employee. It therefore follows that the corporation had the requisite number of employees so as to bring it under the provisions of the Workmen's Compensation Law. The only other employees mentioned in the evidence were Edward A. Martz and Nelson Born.

Martz was not a regular employee, but supposedly had expert knowledge in the matter of installation of refrigerating equipment. He was working for a brief period of time preceding the explosion and accident through which plaintiff was injured. Claim was made that he was a casual employee and not a regular employee. The other employee mentioned, Nelson Born, from time to time was an employee and generally worked on metal roofing or tin or sheet metal work. According to his testimony, he worked continuously from August, 1933, until February, 1934. The plaintiff, Snyder, corroborated him as to his time of employment.

Rheinisch testified that his employment was not continuous or regular, but such hours of the day and such days of the week as he might be needed.

By agreement or stipulation, there was incorporated in the record the weekly wage received by Born from August 26, 1933, until December 2, 1933. If Born did not work after December 2, 1933, he would not be an employee on December 8, 1933, at the time plaintiff was injured. The factual question being in dispute as to these two employees, we do not consider them as such in determining the legal question as to whether or not the corporation had three or more employees.

Under the state of the record, it is our determination that the pleadings and evidence relative to issues numbers 1 and 2 conclusively support plaintiff, and hence the court should not have submitted these issues to the jury.

The law is well recognized and needs no citation of authorities that when the facts are not in dispute it becomes the duty of the court to determine the question as a matter of law.

On the third issue, the evidence likewise was conclusive and uncontradicted that plaintiff sustained injuries in the course of his employment, and hence on this question there was nothing to submit to the jury.

This brings us to the fourth issue brought into the case through defendants' answer setting up the claim of settlement. The factual questions are uncontradicted, and again we have purely a question of law.

This question is not easy of determination, due to the difficulty of reconciling certain decisions of the Supreme Court.

As heretofore stated, the trial court withdrew this issue from the consideration of the jury. Ordinarily this ruling of the court would not be prejudicial to the defendants, since the verdict was returned in favor of the defendants. However, being of the opinion that the trial court was in error in submitting issues 1, 2 and 3 to the jury and therefore the jury's verdict would be erroneous on the issues thus submitted, the judgment must be reversed unless it can be sustained under the issue of settlement. The factual question of settlement being undisputed, we might, if we determine the settlement legal, sustain the judgment, although upon different grounds than those determined by the trial court.

Considering this question, it is proper to have an understanding that the Rheinisch Hardware Company was not a subscriber under the Workmen's Compensation Law, nor had it taken the necessary steps through which it had elected to carry its own industrial insurance. In short, the company was a nonconforming employer.

Under the provisions of **Sec. 35, Art. II, of the Ohio Constitution** as amended (effective date January 1, 1924), subscribers to the industrial insurance fund, as well as those who have been authorized to carry their own insurance, are immune from any negligence action as was previously recognized under the common law. The constitutional provision authorizes the enactment of laws through which its purpose and object might be carried out. The Legislature has enacted such laws, they being contained in §§1465-37 **to** 1465-108, **GC,** inclusive. Nonconforming employers are not absolved from common law actions founded on negligence. See §1465-73, **GC.**

This section expressly provides that noncomplying employers shall not be entitled to the benefits of the act, "but shall be liable to their employees for damages suffered by reason of personal injuries sustained in the course of employment, caused by the wrongful act, neglect or default of the employer, or any of the employer's officers, agents or employees, etc."

This section further provides:

"And in such action the defendant shall not avail himself or itself of the following common law defenses:

The defense of the fellow-servant rule, the defense of the assumption of risk or the defense of contributory negligence."

The last paragraph of this section further provides as follows:

"And such employers shall also be subject to the provisions of the two sections next succeeding."

The next two succeeding sections, to-wit, 1465-74 **and** 1465-75, contain many provisions not germane to the present question, but do contain provisions through which a nonconforming employer may be held liable under the general provisions of the act to the same extent as though complying. This means that the injured employee of a noncomplying employer has his election of remedies, i. e., he may either proceed against the employer in a suit at law or he may institute the requisite

proceedings before The Industrial Commission.

The procedure before The Industrial Commission is practically the same as where the employer has █ complied with the provisions of the industrial insurance law.

Upon hearing The Industrial Commission determines the amount to be paid and in the case of a noncomplying employer this amount is certified to the Attorney General for action against the noncomplying employer. If for any reason the amount is not recoverable, the Attorney General shall within two years so certify, and thereafter the amount of award is payable by The Industrial Commission out of its surplus fund. In the instant case, the injured plaintiff did not bring action in the Court of Common Pleas against the Hardware Company for damages on account of claimed negligence, although such an action might have been grounded on the claimed negligence of the employee, Martz, bringing about the explosion and resultant injuries. The parties sought to adjust the question of damages by settlement and entered into writings to that effect. This written settlement was executed March 6, 1934. The writings consisted of two instruments, one executed by the Rheinisch Hardware Company and the other by the plaintiff, Elmer L. Snyder. The settlement not only provided for payment of certain items in the nature of compensation and damages for the injuries sustained, but also provided for Snyder's surrendering his stock in the corporation and withdrawing therefrom. Snyder receipted for the sum of $500.00; the allowance of a credit of $100.00 on a customer's debt; the agreement to pay the bill of the Wilson Memorial Hospital, found through the evidence to be $161.85; the attending physician's bill, in the sum of $127.00; and the release of a bonus bill from the Frigidaire Corporation, in the sum of $145.50. Said receipt, signed by plaintiff Snyder, contains the further provision:

"And said Elmer Snyder hereby releases any and all claims which he has or might claim to have against said George Rheinisch and the Rheinisch Hardware Company * * * including any and all claims which said Elmer Snyder may have for his injuries and damages growing out of the accident referred to before herein which occurred when said Elmer Snyder was installing Frigidaire equipment in the Updegraff store in Sidney, Ohio."

Snyder also received his $15.00 per week continuously from date of injury until date of settlement.

The purported settlement was entered into after the plaintiff had apparently fully recovered, and both parties were represented by able counsel and no questions raised but what the intention of the parties was fully set out in the writings.

On December 2, 1935, the plaintiff Snyder instituted his proceedings before The Industrial Commission and thereafter the matter advanced step by step as heretofore narrated.

While not so stated, it is inferable that this move of plaintiff was actuated by reason of his having developed a disease known as multiple sclerosis. Evidence was introduced relative to this affliction, but the trial court eliminated all such evidence and instructed the jury not to consider it, on the ground that the evidence failed to show that this affliction of multiple sclerosis had any connection or was in any way caused by the injury sustained on December 8, 1933. Counsel for plaintiff in their brief make no claim of error as to the court's ruling, and hence it is unnecessary for us to make any further comment.

Independent of any decisions of our Supreme Court, we are unable to see any good reason under the facts in the instant case why the settlement solemnly executed by the parties under and by the advice of counsel, should not be binding and a complete defense to the present action of the plaintiff. Cer-

tainly no one would dispute the question that had plaintiff filed an action, as he had a rght to do under the provisions of §1465-73, GC, and the action had proceeded to judgment, either for or against him, that that would constitute an election and he would thereafter be barred from bringing a proceding before The Industrial Commission. Likewise, had he instituted action and thereafter settled, it certainly would be a bar to any further action.

Having a right of action and settling it without going to court, why should not this also bar a proceeding before the Commission? Through the settlement of March 6, 1934, when apparently he was fully recovered, he received more than he would have received had he presented his claim to The Industrial Commission and had been allowed the full maximum.

He still retains this amount and has made no offer to return it. We think the case of Adler et v Hohn, 129 Oh St 303, is in point with a single distinguishing feature. In the cited case the employer had not complied with the Workmen's Compensation Law, although employing three or more workmen and was subject to its provisions. The employee, Hohn, was injured to such an extent as to become totally and permanently disabled. An agreement was thereafter entered into between the plaintiff and defendant, whereby in consideration of the relinquishing of plaintiff's right to seek damages by suit or compensation through The Industrial Commission, the defendant agreed to compensate the plaintiff as would The Industrial Commission under the same circumstances, viz., the maximum fixed by the Workmen's Compensation Law, to-wit, $18.75 per week and medical expenses so long as his disability was total, but in the event of partial recovery then in accord with the schedules of the Workmen's Compensation Act. Pursuant to the agreement, the employer paid the employee for more than two years and then refused to further perform. The employee's action sought damages by rea-son of the employer's failure to carry out the terms of the contract.

The trial court on the opening statement of counsel for the plaintiff, directed a verdict for the defendant and entered judgment. On proceedings in error in the Court of Appeals, the judgment of the trial court was reversed. The Supreme Court affirmed the judgment of the Court of Appeals. Syllabi 1 and 2 read as follows:

"1. An agreement entered into by an employer, who has not complied with the Workmen's Compensation Law, to compensate his injured employee in accordance with the terms of the Workmen's Compensation Law, in consideration of such employee foregoing his rights under the statute, is not invalid.

"2. Such agreement contemplates only the surrender of the right of the employee to maintain an action for damages under the provisions of §1465-73, GC, and does not waive, but rather asserts, "his rights to compensation" under the Workmen's Compensation Law."

At the outset we said there was only one distinguishing feature in the instant case and the cited case. We now state that the distinguishing point is that in the cited case the employee sought the enforcement of the contract of settlement, whereas in the instant case the employer presents the agreement of settlement as a complete defense.

The decision of the Court of Appeals in this same case will be found in Volume 49, Ohio Appeals, page 381. Judge Lieghley delivered the opinion and it should be read in its entirety, as should the opinion of Judge Mathias speaking for the Supreme Court, starting at page 305, 129 Oh St, supra.

We have also examined the case of Industrial Commission of Ohio v Broskey, 128 Oh St 372. The opinion in this case was by Stephenson, J. The statement of the case and the opinion are too lengthy to attempt to incorporate

in this opinion. In order to thoroughly understand the principles, it is essential that it be read in its entirety. We will very briefly state the nature of the controversy:

Broskey, an employee, was a driver for the Union Motor Transit, Inc., of 608 Sinclair Bldg., Steubenville, Ohio. The company was engaged in intrastate and interstate business of transportation. The employee, Broskey, suffered an accident and injury while driving one of the employer's busses in the State of West Virginia. The company employed more than three employees and had taken out industrial insurance in Ohio. It had not taken out industrial insurance in West Virginia, and apparently there was some question as to whether or not the rights of the parties were affected through this fact. The employer made report of the accident to the Ohio Commission and from time to time bills were filed by physicians, nurses and hospitals. The employee signed and filed his application with the Industrial Commission. The Commission recognized the claim and ordered payments. Up to January 13, 1930, it had paid to the employee the sum of $275.89 and had paid doctor and hospital bills in the total amount of $1054.53. Shortly thereafter the employee filed action in the Common Pleas Court of Jefferson County against the Union Motor Transit, Inc., asking damages for $50,000.00. Thereafter the Industrial Commission, receiving information of the pending action, discontinued further payments pending the outcome of the civil action in Jefferson County. On January 20, the pending civil action was settled and the employee, Broskey, receipted for $6500.00, stipulating in the receipts that his compromise would terminate all claims for injuries or damages of whatever nature, known or unknown, including future development thereof in any way growing out of or connected, or which may hereafter in any way grow out of or be connected with said accident, etc., and thereafter the employee, Broskey, instituted proceedings before the Ohio Industrial Commission, asking for an additional award. The defense was based on the fact of settlement. On page 385 of the opinion, Judge Stephenson makes the following observation:

"Suppose the employer in this case had been a self-insurer, could it not have set up the settlement and release made by Broskey as a bar to any future action for damages for the identical injuries? No one would contend for a moment but that the self-insuring employer could make such a plea, and that if maintained it would be a complete bar to the action."

Syllabus 1 of the reported case reads as follows:

"1. Additional workmen's compensation will not be awarded a claimant who after receiving an award, sued his contributing employer for damages for the identical personal injuries for which he claims further compensation, and by way of settlement of that suit received a substantial sum which he acknowledged to be satisfactory and in consideration of which he executed to his employer a complete release against all past, present and future claims."

We now come to the first of two cases, both of which are difficult to reconcile with the later decisions of the Supreme Court. Strange as it may seem, neither of these two cases is mentioned in the two decisions heretofore cited. Under the well recognized principles the later cases will be controlling, unless principles announced in the earlier cases are not at variance with the later decisions.

First, we take up the case of State ex Trumbull Steel Co. v Industrial Commission et, 106 Oh St 82. The Trumbull Steel Company was a self-insuring employer, and had fully complied with the

Workmen's Compensation Law. Blanche Dolexander was the claimant, and was seeking compensation on account of the death of her husband, Lawrence Dolexander, resulting from injuries sustained in the course of his employment. Following the death of Lawrence Dolexander, an administrator·was appointed for his estate. Thereafter negotiations were had between the Steel Company and the administrator relative to the settlement of the claim for wrongful death, wherein the company was informed that a petition for damages had been prepared and would be filed unless the settlement was made, and settlement in the sum of $2000.00 was agreed upon. Thereafter application was made to the Probate Court, under §10772, GC, for authority to make the settlement, which authority was granted and thereafter the amount paid to the administrator. At the same time the widow, upon payment, executed a separate release, discharging the Steel Company from all liabilities for the death of her husband and for all claims for compensation therefor. This settlement was made on or about the last of October, 1920. In April, 1921, the widow filed her application with The Industrial Commission, asking for adjustment of compensation due her from the Steel Company under the Workmen's Compensation Law. The employing Steel Company moved that the application be dismissed for the reason that the Probate Court had approved the settlement and that the widow had made her election and execution of the release for damages. The Commission by a vote of two to one overruled the application. Thereupon the Steel Company filed an original action in prohibition in the Supreme Court. In the Supreme Court the writ was denied. On page 88, Judge Jones, delivering the opinion,. uses the following language:

"In this case there was no waiver of the right to claim compensation, notwithstanding the proceedings in the probate court and the release executed by the dependent. No doubt when the question comes up for consideration before the commission that body in its determination of sole or partial dependence will give full consideration to the amount paid by The Trumbull Steel Company to the administrator."

The language of the court at page 86 may in a measure distinguish the case:

"Under the last-quoted provision of §1465-76, GC, the employee or his legal representative waives his right to award only if he has exercised his option "to institute proceedings in court, as provided in this section."

The first syllabus also refers to this section, 1465-76, GC.

This section was repealed, first by implication through the amendment of Sec. 35, Art. II, of the Constitution, effective January 1, 1924, and later was expressly repealed by the Legislature, effective July 9, 1931.

If this was the only case giving us trouble, we probably could find a satisfactory distinguishing feature through the repeal of §1465-76, GC, as compared with the language of §1465-73, GC.

The second case to which we have referred instead of clarifying, adds to our trouble. We now refer to the case of State ex Upperman v Industrial Commission of Ohio, 122 Oh St 509. This is a per curiam opinion and was decided June 18, 1930.

The employee was injured March 13, 1924. This was subsequent to the amendment of Sec. 35, Art. II, Ohio Constitution. George A. Muth was the employer and at the time of the accident to Upperman was the employer of three or more workmen regularly in the same business. Muth had not complied with the Workmen's Compensation Law with respect to the payment of premiums; was not a subscriber to the state insurance fund, nor had he elected

to pay compensation direct, Upperman died from his injuries and the relatrix, who was the widow of the decedent, applied to the Commission for compensation. The Commission awarded relatrix the sum of $4801.10, as compensation and the further sum of $198.90 for medical expenses. The history of the case discloses that the award was certified to the Attorney General for collection; that the Attorney General brought action against the employer, which suit resulted in a judgment in favor of the employee. Thereafter the Attorney General certified to the Commission that he was unable to collect the amount of the award. The widow filed an original action in the Supreme Court, seeking a mandatory writ requiring the Commission to pay to her the amount of the award out of its surplus funds. Thus far the reported case and the instant case have nothing in common, but the following statement of the court raises a similar question:

"It seems to be conceded by the pleadings and by counsel that upon the day of the employee's injury and death, to-wit, March 13, 1924, the employer, Muth, secured from the relatrix a settlement and written release of all damages in consideration of the payment of her husband's funeral expenses. The reply alleges that, in her application to the commission for an award, the commission ignored the release."

The court then goes on to say:
"As to that feature, this case is controlled by **State ex Trumbull Steel Co. v Industrial Commission, 106 Oh St 82, 138 N. E. 530.** We see no distinction between that case and this; nor can we perceive any reason why the principle announced in the Steel Company case should not be applied to a noncomplying as well as to a complying employer. The fact is alleged, though vaguely so, that the sum of $198.90, awarded by the commission for medical expenses, was paid by Muth to the relatrix in March, 1924. If no issue be made upon

that point, a writ of mandamus will be awarded to relatrix against the respondent, compelling the payment of $4,801.10; that being the amount of the commission's award to the widow as compensation for her husband's death."

We might attach some significance to a part of the above quotation wherein the statement was made that "the reply alleges that in her application to the commission for an award, the commission ignored the release."

We think that it would be a correct statement of the law to say that if the Commission when considering the case ignored the question of settlement and made an award, that they could not be heard afterwards to raise the question. In other words, the award as made would be final, unless carried up within the statutory time.

We have also examined the case of **Simpson v Industrial Commission of Ohio, 36 Oh Ap 316.** This was a Cuyahoga County case, decided April 20, 1930, the decision being by a foreign court, Sherick, J., writing the opinion. The first syllabus reads as follows:

"1. Injured claimant, having statutory right to elect to seek compensation against employer or industrial commission, could not proceed against commission after receiving full compensation from employer."

It is our conclusion that §1465-73, GC, in providing for election of remedies against noncomplying employers, is very broad and neither remedy is in any sense restricted, as was under §1465-76, GC. See opinion of the Supreme Court in **Steel Company v Industrial Commission, 106 Oh St 82,** supra.

To further summarize, we again call attention to **Sec. 35, Art. II of the Constitution of Ohio of 1912** and the amendment effective January 1, 1924. Under the original constitutional enactment providing for workmen's com-

pensation legislation, the organic law did not control the character of remedies.

Sec. 1465-76, GC, provided for the election of remedies under certain conditions. Among other things this section contains the following provision:

"Every employee, or his legal representative in case death results, who exercises his option and instituted proceedings in court, as provided by this section, waives his right to an award, or direct payment of compensation from his employer under Sec. 22 hereof, as provided in this act."

The Supreme Court of Ohio in case of State ex Trumbull Steel Company v Industrial Commission, et, 106 Oh St 82, supra, construed the above provision of the section very strictly, and in substance held that nothing less than instituting "proceedings in court" would constitute a waiver of the right to proceed before The Industrial Commission.

The constitutional amendment effective January 1, 1924, made a substantial change in the organic law by providing that compensation under the act "shall be in lieu of all other rights to compensation or damages, etc." and further provided:

"Any employer who pays the premiums of compensation provided by law, passed in accordance herewith, shall not be liable and responsible in damages at common law or by statute for such death, injuries or occupational disease."

By this constitutional amendment §1465-76, GC, was repealed by implication and the Supreme Court so held in the case of Mabley & Carew Company v Lee, 129 Oh St 69-73. The act was expressly repealed by the legislature effective August 9, 1931.

The constitutional amendment while providing exclusive remedies as against complying employers, did not so provide as against nonconforming employers.

It therefore follows that §1465-73, GC, was not affected by the constitutional amendment and is still in force. While this section subjects nonconforming employers to the obligations under the Workmen's Compensation Law, it further provides that such employer shall have none of its benefits.

It further provides under this section that employees shall have the election of remedies; he may either file a claim with The Industrial Commission the same as though the employer was conforming, or he may seek damages for injuries sustained in the course of employment caused by the wrongful act, neglect or default of the employer or any of the employer's officers, agents or employees, etc. This section, 1465-73, does not contain similar language to that found in old §1465-76, above quoted and strictly construed in 106 Oh St. supra. §1465-73 simply provides that the employer shall be liable for damages suffered, and so forth.

By reason of the difference in language in the two sections (1465-73 and 1465-76) we are able to distinguish the instant case from the decision of the Supreme Court in 106 Oh St, supra.

Sec. 1465-73 did not create but merely retained the common law liability, and in addition took away certain common law defenses. It also provided the additional remedy of presenting claims to the Commission. Of course, the employee could not pursue both remedies. Independent of the Workmen's Compensation Law, there never was a time that the injured employee having a common law right of action might not settle without going to court. We are unable to see anything in the language of §1465-73 that would take this right away.

It might be well to state that simultaneously with the release of this opin-

ion we are also releasing on opinion in a Montgomery County case, No. 1560, McDonald, Appellee v The Industrial Commission, Appellant. In the Montgomery County case it was sought to raise the question of settlement, but we were unable to find that the evidence adaquately established a settlement. Further, in Case No. 1560, we held the employer to be conforming. Being a conforming employer, proceedings before The Industrial Commission were exclusive. We made the suggestion that The Industrial Commission in making the award, if the facts warranted, might take into consideration any amount paid by the employer in remuneration of his claim.

We held that the uncontradicted evidence of settlement was a complete defense and that the trial court should have sustained defendant's motion for an instructed verdict.

The jury having returned its verdict for defendant and judgment having been entered thereon, we sustain the judgment, although on a different ground. While we find error in the case, the same is not prejudicial and therefore the judgment of the trial court will be affirmed and costs adjudged against appellant.

HORNBECK, PJ. & GEIGER, J., concur.

### APPLICATION FOR REHEARING

Decided June 24, 1939

BY THE COURT:

The above-entitled cause is now being determined on appellant's application for rehearing.

A four page memorandum accompanies the application.

The plaintiff claims that the court in rendering its decision wholly failed to take into consideration the pertinent provision of §1465-74, GC.

With this claim of counsel, we can not agree. In our original opinion we referred to this section. More particularly we contrasted §1465-73, GC with §1465-76, GC.

Our purpose in making the contrast was brought about by reason of the case of Steel Company v Industrial Commission, 106 Oh St 82. In this reported case it is manifest that the Supreme Court was very strictly interpreting § -76, as was pointed out in our original opinion.

Sec. 1465-73, GC, refers to employers who fail to comply with the provisions of the Workmen's Compensation Act. This section expressly pertains to the remedy of the employee by civil action although it takes away from the employer certain defenses. So far as the injury to employee is concerned. he has to the fullest extent a common law right of action, the same as though no Workmen's Compensation Act was in existence. But as we said in our original opinion and repeat now, the litigants generally have the right to make settlements and this was a right of Snyder's in the instant case. Nothing contained in the language of §1465-73, GC, is similar to §1465-76, GC., which the Supreme Court expressly pointed out as a reason for their determination.

We think the original opinion makes our position clear.

Application for rehearing will be overruled.

HORNBECK, PJ., GEIGER & BARNES, JJ., concur.